WARMACK v. HENRY H. CROSS COMPANY.

5-3224                                         377 S. W. 2d 47

Opinion delivered March 30, 1964.

*Keith, Clegg & Eckert,* for appellant.

*Mahony & Yocum, Homer T. Rogers, Gaughan & Laney, Lester E. Dole, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. The issue on this appeal is whether appellant, J. B. Warmack, is the owner of, and entitled to be paid for, $\frac{1}{8}$ of the $\frac{1}{8}$ royalty oil or for 1/16 of the $\frac{1}{8}$ royalty oil, run from the southeast quarter of the northwest quarter of Section 25, Township 15 South, Range 16 West, in Ouachita County. The record reflects that from 1935 to 1959, appellee, Henry H. Cross Company, which had purchased the oil runs from this tract, paid Warmack on the basis of the belief that he owned $\frac{1}{8}$ of the $\frac{1}{8}$ royalty, apparently relying upon a title examination by the company's attorney. In 1959, another examination of the title was made, and this examination revealed that Warmack owned only 1/128 of the oil. The Cross Company thereupon discontinued paying

Warmack, and he instituted suit. The company answered by Bill of Interpleader, making parties of all the record owners of minerals and royalty in the lands. All answered alleging their record ownership, and asking that their title be quieted against Warmack. On hearing, Warmack's complaint was dismissed for want of equity, and the court gave the Cross Company judgment for the overpayment ($63.29) made to appellant for the last three years. From the decree so entered comes this appeal.

Appellant's claim is based on alleged adverse possession, and laches and estoppel. Admittedly, the only record title held by Warmack is a 1/16 of a 1/8 royalty acquired from L. L. McDonald on January 18, 1935. The conveyance was a quitclaim deed, wherein McDonald quitclaimed to appellant all of his interest to oil, gas, and minerals in the tract. Warmack testified that McDonald told him that he owned 1/64 of the oil. The deed denotes the fact that a prior conveyance had been made to a Mrs. Carrie Schavey, one of the appellees and whose royalty rights are presently unquestioned on this appeal.

We think, in disposing of appellant's contention of adverse possession, that the chancellor's reasoning and findings were sound. After stating that Warmack's claim of adverse possession was based on the fact that the Cross Company paid appellant for almost 25 years on the premise that Warmack owned 1/64 rather than 1/128, the court stated:

"There are several intervening defendants in this law suit and Warmack testified that he was not claiming adversely against any of the defendants with royalty interest. In fact, he never explained whose royalty he claims to have held in adverse possession and testified that his controversy was with Cross. The other royalty owners have had actual possession of their royalty interest to which they have good record title. They have been paid for their oil runs and have never claimed anything adversely against Warmack. The proof further showed they had no knowledge of what interest Warmack

was claiming and nothing was ever done by Warmack to indicate he was claiming adversely against any of them. The Court, after giving this matter much consideration, is of the opinion that plaintiff Warmack could not be in adverse possession of any royalty belonging to Cross, because Cross does not have any royalty, and never has had, in this land; and it is further determined and found by the Court that Warmack has acquired nothing by adverse possession against any of the defendants and that the overpayment by defendant Cross to the plaintiff was a mistake by the defendant Cross when making those payments to plaintiff from month to month and that he did not acquire title by adverse possession by reason of such error or mistake.

"The Court has done extensive research and finds no decision in Arkansas covering this matter. The only case I was able to find is *Saunders* v. *Hornsby (Texas CA)* 173 S. W. (2) 795, which was cited by Counsel for the defendant Cross, and the Court is of the opinion the authority of and the reasoning in that case should be accepted here and that Warmack must fail in the instant case for the same reason Saunders failed."[1]

Evidently, appellant emphasized the adverse possession in the lower court since that court did not comment on Warmack's other contention, *viz*, laches and estoppel. Here, this last assertion is rather vigorously argued, but we are of the view that the contention is without merit. Though, during his testimony, Warmack never did state whose royalty he claimed, it finally develops that his asserted interest is in conflict with a group of

---

[1] In *Saunders*, the court said: "Appellant further contends under these assignments of error that by executing the division order by which the pipe line company was authorized and instructed to pay to him the 7/64 of the ⅛ royalty interest, of which appellee was the record owner, and the receipt and collection by him of that interest constituted an appropriation of a like portion of the oil and gas in place and was sufficient to constitute adverse possession of it. We do not think it can be said that such acts of appellant were, in any sense, an appropriation of that portion of the estate owned by appellee. By executing the division order and collecting the 7/64 of the royalty belonging to appellee, appellant merely converted to his own use the oil and gas that had already been produced by the Gulf Production Company and did not affect that which remained in the ground, which is the subject matter of this case."

appellees termed the "Hobson defendants."[2] Hobson made final disposition of his remaining interest in 1947 to Homer T. Rogers.

It being admitted that these appellees were the holders of the record title, the burden was on appellant to establish his claim. Appellant says that not only was there a delay by appellees of some 25 years in asserting their rights, but that, in addition, two material witnesses have died which has prevented appellant from offering evidence that would support his claim to the royalty. Warmack, in this assertion, is referring to the death of L. L. McDonald, from whom he acquired his interest, and Mrs. Maud Crawford, who handled the title work for Cross in 1935, and upon whose opinion the division order was based. The title opinion to Cross from Mrs. Crawford has been lost, nor could a copy be located in the attorney's files. Appellant says, "Why did not Hobson, Orgain, and Hutchinson make some demand for payment for their royalty for 25 years? Appellees had a full opportunity to answer, but they chose to remain silent." As stated, the burden was upon appellant to overcome the record title held by appellees, and there was nothing to prevent the taking of the depositions of Hobson or other "Hobson defendants," who are still living; nor was there anything to prevent appellant from calling certain of these parties as witnesses for the purpose of ascertaining the cause of their delay in asserting their interest. In fact, one of these defendants, Homer Rogers, was in the courtroom engaging in the trial of the case. There does not appear to be any evidence that these appellees even knew that Warmack had any interest at all; certainly there is no evidence that any of these appellees knew that there was a conflict between the interest of appellant and their own interests, nor that Warmack was actually receiving royalties to which they were entitled. In fact, the court found, "The proof

[2] Homer T. Rogers, Will E. Orgain, D. P. Perkins, Margaret Josephine Hutchinson, Margaret Jean Kuenstler, Bank of the Southwest National Association and D. P. Perkins, Trustees U/W of F. M. Hutchinson, Deceased: Mildred McNellie Castle, Viola McNellie Althause, Lucille McNellie Rowan, and William Benton III.

further showed that they [other royalty holders] had no knowledge of what interest Warmack was claiming * * *." Of course, the "Hobson defendants" could not acquiesce in Warmack's being overpaid, unless they first knew that he was being overpaid. Solely from the standpoint of logic, it would definitely appear that they were without knoweldge of this fact, for it is not human nature that persons, knowing of a right to receive money, will forego that right, and permit a complete stranger to receive it in their stead.

Of course, appellees are not bound because the Cross Company had erroneously made the payments to Warmack. Almost, appellant's argument would seem to boil down to the fact that because appellant has been overpaid for the last 25 years, he should continue to be overpaid.

We find no error in the decree.

Affirmed.